MARC S T DWORSKY (#157413)
**REID COLLINS & TSAI LLP**
4450 Via Alegre
Santa Barbara, CA 93110
Telephone: (213) 429-4022
Email: mdworsky@reidcollins.com

JONATHAN M. KASS*
**REID COLLINS & TSAI LLP**
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
Email: jkass@reidcollins.com

YONAH JAFFE*
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2731
New York, NY 10170
(212) 344-5200
Email: yjaffe@reidcollins.com

DUANE L. LOFT*
JINGXI ZHAI*
**PALLAS PARTNERS (US) LLP**
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Email: Duane.Loft@pallasllp.com
Email: Jingxi.Zhai@pallasllp.com

*Pro hac vice applications forthcoming*

*Attorneys for Petitioners*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| In re Application of<br><br>QUADRE INVESTMENTS, L.P. and<br>OASIS FOCUS FUND LP,<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 24-MC-1341-MMP<br><br>**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING** |
|---|---|

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................1

BACKGROUND ...................................................................................4

    A.    Parties to the Foreign Proceeding ........................................4

    B.    The Merger ........................................................................5

    C.    Respondent's IPO and SINA's Investment in Respondent .................7

    D.    Cayman Islands Appraisal Proceeding ..................................8

    E.    The Requested Discovery ..................................................10

    F.    Prior Applications Filed in This Court....................................11

    G.    Attempts to Meet and Confer With Respondent's Counsel...............13

ARGUMENT .....................................................................................13

I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782. ..........................................................................14

    A.    Respondent Is Found In This District. ...................................14

    B.    The Discovery Sought Is "For Use" In a Foreign Proceeding............15

    C.    Petitioners Are "Interested Persons."....................................17

II.    The *Intel* Factors Weigh In Favor of Discovery. .........................17

    A.    *Intel* I: Respondent Is a Non-Participant in the Appraisal Proceeding.17

    B.    *Intel* II: Cayman Courts Are Receptive to the Requested Discovery. 18

    C.    *Intel* III: Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions.........................................................................21

    D.    *Intel* IV: The Subpoena Is Not Unduly Burdensome.........................23

CONCLUSION...................................................................................24

i

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>

*de Leon v. Clorox Co.*,
     No. 19-MC-80296-EMC, 2021 WL 718840 (N.D. Cal. Feb. 24,
     2021) ......................................................................................................... 23

*de Leon v. Clorox Co.*,
     No. 19-mc-80296-DMR, 2020 WL 4584204 (N.D. Cal. Aug. 10,
     2020) ......................................................................................................... 23

*Euromepa, S.A. v. R. Esmerian, Inc.*,
     51 F.3d 1095 (2d Cir. 1995) ....................................................................... 3

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
     No. 19-MC-80215, 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) .......... 14, 23

*In re Alpine Partners, (BVI) L.P.*,
     635 F. Supp. 3d 900 (N.D. Cal. 2022) .................................................... 17, 19

*In re Application of Action & Prot. Found.*,
     No. C 14–80076 MISC EMC (LB), 2014 WL 2795832 (N.D. Cal.
     June 19, 2014) ......................................................................................... 14

*In re Application of Credit Suisse Virtuoso SICAV-SIF In Respect of the*
     *Sub-Fund Credit Suisse (Lux) Supply Chain Fin. Fund*,
     No. 21-MC-80308-JCS, 2022 WL 1786050 (N.D. Cal. June 1,
     2022) ......................................................................................................... 22

*In re Application of Murchinson Ltd.,*
     No. 2:23-mc-00191-SB-PD, 2024 WL 489175 (C.D. Cal. Jan. 26,
     2024) ......................................................................................................... 15

*In re Application of Quadre Invs., L.P.*,
     No. 18-mc-00118, 2019 WL 1075274 (C.D. Cal. Jan. 7, 2019) ................. 17

*In re FourWorld Event Opportunities LP*,
     No. MC-22-00055-PHX-DWL, 2023 WL 155863 (D. Ariz. Jan.
     11, 2023) ................................................................................................... 20

*In re Hattori*,
     No. 21-mc-80236-TSH, 2021 WL 4804375 (N.D. Cal. Oct. 14,
     2021) ......................................................................................................... 22

*In re Hopkins*,
     No. 20-mc-80012-SVK, 2020 WL 733182 (N.D. Cal. Feb. 13,
     2020) ......................................................................................................... 19

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Illumina Cambridge Ltd.*,
No. 19-mc-80215-WHO (TSH), 2019 WL 5811467 (N.D. Cal.
Nov. 7, 2019) ...................................................................................... 19

*In re Koninklijke Philips N.V.*,
No. 17-MC-1681-WVG, 2018 WL 620414 (S.D. Cal. Jan. 30,
2018) ............................................................................................... 14, 17

*In re Mireskandari*,
No. 12-CV-2865-IEG (DHB), 2012 WL 12877390 (S.D. Cal.
Dec. 20, 2012) ............................................................................... 17, 22

*In re Mut. Assistance of Local Ct. of Wetzlar, Germany*,
No. 17-mc-00078-SKO, 2018 WL 2183966 (E.D. Cal. May 11,
2018) .................................................................................................... 14

*In re Nokia Techs. Oy*,
No. 21MC1487 (MSB), 2022 WL 788702 (S.D. Cal. Mar. 15,
2022) .................................................................................................... 18

*In re Oasis Focus Fund LP*,
No. 22-mc-0112-BGS, 2022 WL 17669119 (S.D. Cal. Dec. 14,
2022) ............................................................................................... passim

*In re Oasis Focus Fund LP*,
No. 22-mc-0112-BGS, ECF No. 30 (S.D. Cal. Mar. 07, 2023) .................. 11

*In re Omori*,
No. 23-mc-80195-EJD, 2023 WL 5957172 (N.D. Cal. Sept. 12,
2023) .................................................................................................... 17

*In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*,
No. C18-1673JLR, 2019 WL 291673 (W.D. Wash. Jan. 23, 2019) ............ 23

*In re Request for Int'l Jud. Assistance from the Nat'l Ct. Admin. of the
Republic of Korea*,
No. C15-80069 MISC LB, 2015 WL 1064790 (N.D. Cal. Mar.
11, 2015) ............................................................................................... 14

*In re Request for Judicial Assistance from the Seoul Dist. Crim. Ct.*,
555 F.2d 720 (9th Cir. 1977) ...................................................................... 15

*In re Wallis*,
No. 18-MC-80147-DMR, 2018 WL 5304849 (N.D. Cal. Oct. 24,
2018) ................................................................................................... 2, 13

*In re: Application of Joint Stock Co. Raiffeinsenbank*,

iii

No. 16-MC-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016).................................................................................................18

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
No. 16-MC-80048-MEJ, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016).................................................................................................19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) .........................................................................passim

*Laggner v. Parsa*,
No. 3:22-mc-80328-WHO, 2023 WL 163579, (N.D. Cal. Jan. 11, 2023).................................................................................................20

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ..........................................................22

*Palantir Techs., Inc. v. Abramowitz*,
415 F. Supp. 3d 907 (N.D. Cal. 2019) ........................................18

*Qualcomm Inc for an Ord. Pursuant to 28 U.S.C. § 1782*,
No. 18-MC-80134-NC, 2018 WL 6660068 (N.D. Cal. Dec. 19, 2018)...........................................................................................15, 16

**Statutes**

28 U.S.C. § 1782.............................................................................passim

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

1   Quadre Investments, L.P. ("**Quadre**") and Oasis Focus Fund LP (together,
2   "**Petitioners**") respectfully submit this application pursuant to 28 U.S.C. § 1782 (the
3   "**Application**") to take limited discovery from TuSimple Holdings, Inc. ("**TuSimple**"
4   or "**Respondent**"), a corporation found in this District for use in a foreign shareholder
5   appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Cayman**
6   **Court**") on May 18, 2021 (the "**Appraisal Proceeding**").

### PRELIMINARY STATEMENT

8   As described more fully below, in the Appraisal Proceeding, Petitioners (along
9   with other dissenting shareholders) seek a determination of the fair value of its shares
10   in SINA Corporation ("**SINA**" or the "**Company**"), a Cayman Islands company that
11   was delisted from Nasdaq and taken private pursuant to a merger that became effective
12   on March 22, 2021 ("**Merger Completion Date**"). Petitioners' shares in SINA were
13   forcibly canceled through a merger apparently orchestrated by the Company's
14   chairman of the board of directors and CEO, Mr. Charles Guowei Chao ("**Chao**"), and
15   entities controlled by him (the "**Merger**").

16   The Merger was coercive and fundamentally unfair to minority shareholders,
17   both with respect to the Merger price of $43.30 (the "**Merger Price**"), which
18   significantly undervalued SINA's shares, and the process to approve the Merger. For
19   example, no effort was undertaken to conduct a pre- or post-signing market check with
20   respect to the Merger Price or to shop the Company to competing bidders to see if a
21   higher price could be obtained. The Merger was apparently orchestrated by Mr. Chao,
22   to take the Company private using his control of 61.1% of the Company's voting
23   shares. The Buyer Group, which was comprised of Mr. Chao and entities owned
24   and/or controlled by him, was effectively able to force the Merger on minority
25   shareholders without their consent and offer them inadequate consideration for their
26   shares.

27   Through this Application, Petitioners seek tailored and proportionate discovery
28   from TuSimple, one of SINA's long-term investments. As part of its assessment that

the Merger Price was fair, the financial advisor to SINA vastly undervalued SINA's 20% interest in TuSimple by undervaluing TuSimple at a "high" estimate of $1.2 billion.  Just one month after the Merger became effective, however, TuSimple underwent an initial public offering ("**IPO**") at a valuation of nearly $8.49 billion, seven times greater than the "high" estimate of $1.2 billion.  Because of SINA's substantial investment in TuSimple, the value of TuSimple was a key component in determining the fair value of SINA and SINA's shares.  Petitioners seek discovery from Respondent concerning its IPO and the fair value of SINA's shares—core issues in the Appraisal Proceeding.

Petitioners previously filed a Section 1782 application in this District against Respondent in connection with the Appraisal Proceeding.  There, on December 14, 2022, the Hon. Bernard G. Skomal issued a report and recommendation (the "**Report and Recommendation**") recommending that the discovery not be granted primarily because the application sought discovery from TuSimple that post-dated the "**Valuation Date**" (*i.e.*, Merger's approval by SINA's shareholders on December 23, 2020) and thus, exceeded the limits of discovery set forth by the Cayman Court.  *In re Oasis Focus Fund LP*, No. 22-mc-0112-BGS, 2022 WL 17669119, at *7 (S.D. Cal. Dec. 14, 2022).  Since then, the Cayman Court has confirmed that post-valuation date discovery relating to TuSimple's IPO is relevant and should be disclosed.  Thus, the reasoning underpinning the Report and Recommendation's recommendation to deny the Prior Application no longer applies and would not bar the narrowly tailored requested discovery here.

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before foreign tribunals.  Section 1782's broad applicability and "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures."  *In re Wallis*, No. 18-MC-80147-DMR, 2018 WL 5304849, at *5 (N.D. Cal. Oct. 24, 2018).

As described below, Petitioners' Application meets all of the statutory requirements of Section 1782: (i) Respondent "resides" or is "found" in this District because Respondent is headquartered in San Diego, California; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, respondents in the Appraisal Proceeding, easily meet the standard for an "interested person." The Report and Recommendation found that the first and third factors were met, and its prior finding that post-Valuation Date Discovery did not meet the "for use" requirement is no longer applicable given the Cayman Court's subsequent finding that post-valuation date discovery relating to TuSimple's IPO is relevant.

In addition, each of the Supreme Court's discretionary factors under Section 1782 weigh decisively in favor of discovery. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

*First*, Petitioners seek discovery from a "nonparticipant" in the foreign action. *Id.* Respondent is not a party in the Appraisal Proceeding or otherwise subject to the jurisdiction of the Cayman Court. The first factor is satisfied.

*Second*, there is no indication, let alone the required "authoritative proof," suggesting that the Cayman Court might be unreceptive to Section 1782 assistance. *See id.* To the contrary, as established in the accompanying declaration of Quadre's Cayman Islands counsel Rocco Cecere ("**Cecere Declaration**" or "**Cecere Decl.**"), Cayman Islands courts have expressly allowed litigants to seek documents through Section 1782 in Cayman appraisal actions. *See* Cecere Decl. ¶¶ 67–72. Further, the parties to the Appraisal Proceeding have already sought and obtained Section 1782 discovery from other third parties, pursuant to an order that anticipates that such evidence may be sought under Section 1782 for use in the Appraisal Proceeding.

*Third*, the Application is not concealing an improper attempt to circumvent foreign discovery restrictions on proof gathering. *Intel*, 542 U.S. at 265. The requested discovery does not implicate any privilege or special protection that would make it improper under the laws of the Cayman Islands.

1   *Fourth*, the requested discovery is not unduly burdensome. *Id.* To the contrary,
2   the subpoena is narrowly tailored to seek information directly relevant to the critical
3   issues in the Appraisal Proceeding—namely evidence addressing the fair value of the
4   Petitioners' shares in SINA, which necessarily includes an assessment of the value of
5   its holding in TuSimple.

6   The concerns expressed in the Report and Recommendation regarding these
7   factors focused on the breadth of the prior requests and they sought post-Valuation
8   Date documents. The Cayman Court has since ruled that the Valuation Date does not
9   apply to the discovery sought, and the documents requested are limited in scope and
10  cannot be obtained from any party to the Appraisal Proceeding. Accordingly, the
11  Application should be granted.

12                          **BACKGROUND**

13      **A.     Parties to the Foreign Proceeding**

14      Petitioners invested in SINA and owned SINA shares immediately before the
15  effective date of the Merger that is the subject of the Appraisal Proceeding. *See* Cecere
16  Decl. ¶ 6. Petitioners are respondents in the Appraisal Proceeding. *Id*.

17      Before the Merger, SINA was a publicly traded corporation incorporated in the
18  Cayman Islands. *Id*. ¶ 8. SINA is a technology company with its primary business
19  lines operating in the Peoples Republic of China, including Sina Weibo ("**Weibo**"),
20  China's largest microblogging platform, akin to Twitter in the United States. *Id*. ¶ 9.
21  Weibo, which spun off from SINA in 2014, continues to trade on Nasdaq under the
22  ticker "WB." Since 2017, SINA has had an ownership interest in Respondent
23  TuSimple.

24      Mr. Chao, the CEO and Chairman of SINA's board of directors, had significant
25  control over the voting shares of SINA. According to the Proxy Statement filed on
26  November 20, 2020 (the "**Proxy Statement**"), *see* Cecere Decl., Ex. B, Mr. Chao—
27  through entities affiliated with and controlled by him—controlled 14.7% of the total
28  outstanding shares of SINA and 61.1% of the total voting power. *Id*. ¶ 13. Mr. Chao

is the sole owner and director of New Wave (as defined below, *see infra* n.1), which was formerly the largest shareholder in SINA. *Id.* ¶ 11.

**B.    The Merger**

The Company, like most businesses, experienced a temporary downtown in share price owing to the COVID-19 pandemic. A few months later, on July 6, 2020, Chao and his affiliated entities[1] (together, the "**Buyer Group**") first submitted a preliminary non-binding proposal to SINA offering to acquire the Company at a price of $41 per share. *Id.* ¶ 14. As noted, the Buyer Group collectively controlled over 61% of the Company's voting shares as of November 20, 2020. *Id.* ¶ 13.

In response, the Company appointed a Special Committee of three "independent" members of the board of directors, which was tasked with considering the proposal. *Id.* ¶ 15. In July 2020, the Special Committee approved the engagement of Morgan Stanley Asia Ltd., a Morgan Stanley subsidiary ("collectively, **Morgan Stanley**") as its financial advisor with respect to the Merger. *Id.* ¶ 16.

The Special Committee did not conduct a pre-signing market check or post-signing market check in respect of the Merger Price. The Special Committee negotiated only with the Buyer Group in the pre-signing period, and there was no post-signing "go-shop" process to solicit other bids. Instead, as the Proxy Statement noted: "The Buyer Group has expressly stated that it has no intention to sell its equity stake in the Company to a third party or to support any alternative transaction to the Proposed Transaction." *Id.* ¶ 17.

While the Special Committee requested an increased deal price of $45 per share, it ultimately agreed to the Buyer Group's offer of only $43.30 per share, the ultimate Merger Price. The Special Committee agreed to an increase in the deal price from $43 to $43.30 as part of a round of negotiations in which a critical protection that would

---

[1] Including New Wave MMXV Limited ("**New Wave**") and its two wholly-owned subsidiaries New Wave Holdings Limited ("**New Wave Holdings**") and New Wave Mergersub Limited ("**New Wave Sub**").

have required approval by a majority of the minority shareholders (the "**MoM Condition**") was excluded from the terms of the Merger. Without the MoM Condition, the Merger's approval was certain regardless of support from the minority shareholders. The Special Committee reasoned that the MoM Condition was "not customary in similar going-private transactions involving Cayman-domiciled companies." *Id.* ¶ 18.

In asserting that the Merger Price and Merger were fair, the Special Committee and SINA's board of directors relied upon the financial analyses performed by Morgan Stanley. *Id.* ¶ 19. On September 28, 2020, Morgan Stanley rendered a fairness opinion to the Special Committee that the Merger Price of $43.30 per share was fair ("**Fairness Opinion**"). *Id.* Morgan Stanley (among other things) performed and relied upon a "sum of the parts" ("**SOTP**") financial analysis that sought to value SINA's various business lines and long-term investments, including TuSimple. *Id.* ¶ 20. Morgan Stanley used "management projections provided by the Company" as the foundation of its SOTP analysis and applied large holding company discounts of between 30–45% to the value of the Company's businesses and long-term investments. *Id.*

Seven months into the pandemic, on September 28, 2020, the Company announced that it had entered into a merger agreement (the "**Merger Agreement**") through which SINA would be acquired by the Buyer Group at the Merger Price of $43.30 per share. *Id.* ¶ 21. Based on the Merger Price, the implied value of the entire Company was $2.6 billion. *Id.* ¶ 22. The Merger announcement led to immediate concern expressed by minority shareholders and independent industry commentators that the Merger Price undervalued SINA. *Id.* ¶ 18.

On December 23, 2020, the Company held an extraordinary general meeting of shareholders ("**EGM**"), at which SINA shareholders voted on whether to approve the Merger. Pursuant to the Cayman Islands Companies Act, the Merger was required to be passed by a two-thirds majority of the Company's shareholders. As noted above, Mr. Chao controlled 61.1% of the total voting power. Prior to the EGM, the Company

received notices of objection from shareholders who in the aggregate held approximately 35.9% of the total issued and outstanding shares of the Company. Despite such widespread concern from the unaffiliated shareholders, the Merger was approved, given the lack of a MoM Condition. *Id.* ¶ 23.

A substantial period between the EGM and the completion of the Merger then followed—significantly longer than in many previous take-private transactions involving Cayman Island companies like this one. This appears to have been due to the high number of objectors, whose objections resulted in a condition precedent (the "**Condition Precedent**") under the Merger Agreement not being satisfied. The Condition Precedent provided that if shareholders holding 10% or more of the Company's shares exercised their dissent rights, New Wave Holdings or New Wave Sub would not be required to complete the Merger. Because 35.9% of total outstanding shares filed notices of objections to the Merger, which exceeded the 10% required by the Condition Precedent, there was theoretically a possibility that New Wave Holdings or New Wave Sub would not go through with the transaction. Ultimately, those entities waived the Condition Precedent and proceeded to consummate the Merger. Accordingly, on the Merger Completion Date, the dissenting shareholders' shares were canceled in exchange for the Merger Price, which Petitioners allege is substantially below their fair value. *Id.* ¶ 26.

## C. Respondent's IPO and SINA's Investment in Respondent

Respondent TuSimple is a self-driving technology company that is headquartered in San Diego, California. Cecere Decl. ¶ 19 n.20. Since 2017, SINA has had a significant ownership interest in TuSimple and held its interest in TuSimple through Sun Dream Inc., an entity "ultimately controlled" by Mr. Chao. *Id.* ¶ 19. Mr. Chao was a member of TuSimple's board of directors, *id.*, and a 20% beneficial shareholder of TuSimple., *id.* ¶ 19 n.21.

SINA's investment in TuSimple played a central role in the valuation of SINA in connection with the Merger. On September 28, 2020, in its valuation analysis of

7

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

the Merger for the purpose of the Fairness Opinion, Morgan Stanley estimated SINA's interest in TuSimple to be worth between a "low" value of $186 million and a "high" value of $288 million. *Id.* ¶ 20.  Morgan Stanley based the "low" on book value as of June 30, 2020, and the "high" value of $288 million on the "most recent market value of US$1.2Bn in Sep 2019."  Cecere Decl. Ex. C at 32.  Morgan Stanley vastly undervalued SINA's investment in TuSimple in opining that the Merger Price was fair.

Thereafter, TuSimple and its management appeared to have orchestrated its IPO concurrently with the SINA Merger negotiations, in a potentially coordinated fashion. On December 23, 2020, the same day the Merger was approved by SINA's shareholders at the EGM, TuSimple filed a confidential draft registration statement with the U.S. Securities and Exchange Commission ("**SEC**"), which referred to its intention to be listed on a U.S. stock exchange. *Id.* ¶ 24.  TuSimple made its first public IPO filing on March 23, 2021, just one day after the Merger Completion Date on March 22, 2021.  *Id.*  Less than a month after SINA's Merger Completion Date, on April 15, 2021, TuSimple went public at a valuation of nearly $8.49 billion, seven times greater than even the "high" estimate of only $1.2 billion considered by Morgan Stanley in its Fairness Opinion.  *Id.*  Morgan Stanley subsidiary, Morgan Stanley & Co. ("**MS & Co.**") served as the leader underwriter for TuSimple's IPO.  *Id.* ¶ 25.

### D.    Cayman Islands Appraisal Proceeding

On May 18, 2021, the Company initiated the Appraisal Proceeding by filing a petition before the Cayman Court under Section 238 of the Companies Act of the Cayman Islands ("**Section 238**"), asking the Cayman Court to determine the fair value of the former shares in the Company held by Petitioners, dissenting shareholders. Cecere Decl. ¶¶ 2–3.  The trial of the Appraisal Proceeding is scheduled to commence on February 17, 2025.  *Id.* ¶ 79.

In determining the fair value of Petitioners' former shareholdings, the Cayman Court will examine both the fundamental and intrinsic valuation of the Company, as well as potential market-based measures such as the Merger Price itself.  There is no

prescribed valuation methodology for the purposes of determining the "fair value" of dissenters' shares. *Id.* ¶ 38. The Cayman Court will consider all reasonable and accepted valuation methodologies to determine fair value that are presented by the parties' experts, including a SOTP valuation analysis such as the one conducted by Morgan Stanley to assess that the Merger was fair. *Id.* ¶¶ 38, 39. As part of its determination, the Cayman Court will also analyze the fairness of the deal process that led to the Board's and the Company's approval of the Merger. *Id.* ¶ 43.

In the Appraisal Proceeding, the "Directions Order," an order setting forth the procedure for pre-trial discovery, *Id.* ¶ 48, expressly provides for discovery related to the value of SINA's investments, such as TuSimple, including documents and communications "related[ ] to the IPO and pre-IPO funding of Tusimple." *Id.* ¶ 50; Ex. M-1, Appendix 3, ¶ r(i). The Cayman Court also previously held that the "Valuation Date"— the date at which the Cayman Court would determine the fair value of the dissenting shareholders' former shares of SINA—would be December 23, 2020, the date of the EGM that approved the Merger ("**Valuation Date**"). *See id.* ¶ 52.

The Cayman Court recently confirmed that the temporal scope of the Company's discovery in the Appraisal Proceeding extends past the Valuation Date. *Id.* ¶ 51. On June 3, 2024, the Cayman Court ruled that the Company must provide discovery in relation to the value of TuSimple through the date of TuSimple's IPO (*i.e.*, April 15, 2021). *Id.* ¶ 58. Specifically, Cayman Court stated:

65.    In the Court's preliminary view both the Weibo and Tusimple transactions were foreseeable as at the Valuation Date. The Court agrees with the observations of CICA that significant price-sensitive events which occur after the Valuation Date, and which were foreseeable are relevant to valuation as at the Valuation Date.

66.    Having regard to the expert evidence on this application, and in light of the CICA's comments, the Court has come to the view that the Directions Order should be varied. It should be varied to the extent that

the Weibo and Tusimple events are temporally covered so that the experts and the Court can be as well informed as possible about the causes of those events (as Birt JA emphasised). The experts will then be able to assist the Court on the effect, if any, of those events on the valuation process. The Court will then assess if, and if so how, the outcome of their views affects the fair value of the Dissenters' shares.

*Id.*, Ex. P ¶¶ 65, 66.  In a subsequent ruling on July 5, 2024, the Cayman Court confirmed that "[t]he Dissenters were successful in their application in which the Court expanded the scope of discovery of documents to include documents relevant to price sensitive events for the period up to and including the merger completion date and until the date of the TuSimple initial public offering (IPO)." *Id.* ¶ 59, Ex. Q ¶ 12.

An order is in the final stages of being agreed to, which memorializes the Cayman Court's rulings providing for the Company to give discovery of, *inter alia*, documents relevant to the valuation of TuSimple through to the TuSimple IPO date. *Id.* ¶ 60.

## E.    The Requested Discovery

Petitioners' Application seeks limited discovery from Respondent on issues relevant to the Appraisal Proceeding, including: (i) the valuation and pricing of TuSimple's IPO; (ii) internal documents concerning TuSimple's cash flow projections and IPO roadshow; (iii) internal documents concerning TuSimple's Board meetings concerning TuSimple's IPO; (iv) documents concerning TuSimple's pre-IPO investor education process; (v) documents and communications concerning TuSimple's IPO exchanged with New Wave, Mr. Chao or Ms. Bonnie Zhang, CFO of SINA; and (vi) internal documents provided to TuSimple's board of directors concerning the valuation and pricing of TuSimple's IPO ("**Requested Discovery**").

The Cayman Court will accept and consider any evidence submitted by the parties, so long as it is relevant and not otherwise subject to an exclusionary rule of evidence.  Cecere Decl. ¶ 73.  As the Cayman Court has confirmed, discovery relating

1  to TuSimple's IPO is directly relevant to the Company's valuation, a central issue in
2  the Appraisal Proceeding. *Id.* ¶¶ 39, 77. The Requested Discovery will be used by the
3  parties' valuation expert as well as the Cayman Court in the Appraisal Proceeding in
4  evaluating the Merger and determining the fair value of Petitioners' shares in SINA.
5  *Id.* ¶¶ 32, 77.

6  **F.    Prior Applications Filed in This Court**

7  On January 21, 2022, Petitioner Oasis Focus Fund, LP filed a Section 1782
8  application in this District to obtain discovery from Respondent in connection with the
9  Appraisal Proceeding, C.A. 3:22-mc-00112. On January 26, 2022, Petitioner Quadre
10 Investments, L.P. filed a Section 1782 application in this District to obtain discovery
11 from Respondent in connection with the Appraisal Proceeding, C.A. 3:22-mc-00156.
12 Both applications were consolidated under C.A. 3:22-mc-00112 on May 5, 2022 (the
13 "**Prior Application**").

14 On May 26, 2022, Respondent moved to quash the Prior Application, which
15 Petitioners opposed. On December 14, 2022, the Hon. Bernard G. Skomal issued the
16 Report and Recommendation recommending that Respondent's Motion to Quash be
17 granted. *In re Oasis Focus Fund LP*, 2022 WL 17669119, at *7 ("The Court finds the
18 'for use' statutory requirement is not met. However, even if this statutory requirement
19 were met, the Court would still not order the discovery based on the discretionary
20 factors."). Petitioners did not object to the Report and Recommendation and on March
21 7, 2023, Petitioners voluntarily withdrew the Prior Application. In their withdrawal,
22 Petitioners reserved their right to re-file and stated that "matters may change in the
23 future that necessitate pursuing discovery under 28 U.S.C. 1782 from Respondent."
24 *In re Oasis Focus Fund LP*, No. 22-mc-0112-BGS, ECF No. 30 (S.D. Cal. Mar. 07,
25 2023).

26 Given the recent developments in the Appraisal Proceeding, the reasoning
27 underpinning the Report and Recommendation's recommendation to deny the Prior
28

1  Application no longer applies and would not bar the narrowly tailored Requested
2  Discovery here.

3      The Court's recommendation to grant the Motion to Quash was, in large part,
4  because the IPO post-dated the Valuation Date established in the Appraisal
5  Proceeding. *In re Oasis Focus Fund LP*, 2022 WL 17669119, at *5. The Court heavily
6  relied on the fact that "[i]n its Directors Order the Cayman Court limited fact discovery
7  to a five-year period ending on the valuation date," *id.* at *3, to find that the "for use"
8  statutory requirement and the second and third *Intel* factors weighed against granting
9  the Prior Application. *See id.* at *11 ("Cayman Court ha[d] issued orders setting limits
10 and parameters, including the Valuation Date as an outside point for discovery with
11 the only exception being requests made by experts, and there are no such requests
12 here."). In its reasoning, the Court also noted that "if Petitioners had an expert request
13 that *permitted this discovery beyond the Valuation Date* … the Court would likely find
14 the for use requirement met for at least some of the requests" and "would also likely
15 impact a number of the discretionary factors that currently weigh against Petitioners."
16 *Id.* at *6 n.9 (emphasis added).

17     Now, the Cayman Court itself has permitted discovery beyond the Valuation
18 Date in the Appraisal Proceeding, Cecere Decl. ¶ 58, Ex. P ¶ 65–67, 70–71, thus
19 removing a key basis for the Court's denial of the Prior Application. *See In re Oasis
20 Focus Fund LP*, 2022 WL 17669119, at *5 ("To the extent Petitioners are requesting
21 discovery that concerns TuSimple post-EGM, it is foreclosed by the Cayman Court.").
22 The Cayman Court also specifically contemplated that any TuSimple-related
23 discovery covering the time post-dating the Valuation Date should be allowed "so that
24 the experts and the Court can be as well informed as possible," Cecere Decl. ¶ 58, Ex.
25 P ¶ 66, and that such discovery would be used experts, "so that the experts can review
26 that material and explain to the Court how and, if so, to what extent the IPO of
27 TuSimple in April 2021 is relevant to the fair value of the Dissenters' shares." Cecere
28 Decl. ¶ 58, Ex. P ¶ 71. In sum, the "primary dispute between the parties as to [the

12

second and third *Intel*] factors" as to "whether the discovery Petitioners seek from TuSimple conflicts with the Cayman Courts rulings" is no longer in dispute given the Cayman Court's ruling. *In re Oasis Focus Fund LP*, 2022 WL 17669119, at *10.

The Report and Recommendation also found that the first *Intel* factor weighed against granting the Prior Application "at least as to the discovery that might be obtained publicly or from SINA." *Id.* at *9. Here, the Requested Discovery explicitly seeks documents that would not be in the possession of the Company, such as TuSimple's internal documents and correspondence with third parties. *See* Loft Decl., Ex. 1. As to the fourth *Intel* factor, the Report and Recommendation found that the Prior Application's requests were "broad," "cover[ing] and almost three-and-a-half year period including a period after the Valuation Date set in the Appraisal Proceeding, covering forty-five categories of documents." *Id.* at *13. In this Application, Petitioners have narrowly tailored the Requested Discovery to a significantly reduced number of requests seeking information that would not be obtainable from the Company during a temporally narrowed 5-month time period leading up to TuSimple's IPO. *See* Loft Decl., Ex. 1.

## G.    Attempts to Meet and Confer With Respondent's Counsel

Before filing the instant application, Petitioners attempted to meet and confer with Respondent's counsel to resolve the dispute without this Court's involvement. Declaration of Duane Loft ("**Loft Decl.**") ¶ 6. After exchanging multiple correspondence, Respondent's counsel became non-responsive. *Id.* Given the lack of response by Respondent's counsel, Petitioners have filed the instant Application.

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending foreign proceeding or a foreign proceeding. *Intel*, 542 U.S. at 246. A Section 1782 application must satisfy three "modest prima facie elements": (1) the discovery is sought from someone who resides or is found within the District; (2) the discovery is for use before a foreign tribunal;

and (3) the applicant is an "interested person." *In re Wallis*, No. 18-MC-80147-DMR, 2018 WL 5304849, at *4 (N.D. Cal. Oct. 24, 2018).

If the statutory requirements are met, the court considers four discretionary "*Intel*" factors: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

In exercising this discretion, courts are mindful of the "twin aims of § 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *In re Request for Int'l Jud. Assistance from the Nat'l Ct. Admin. of the Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) (citation omitted). No one factor should be given more weight than the others, and no one factor is dispositive. *See In re Mut. Assistance of Local Ct. of Wetzlar, Germany*, No. 17-mc-00078-SKO, 2018 WL 2183966, at *3 (E.D. Cal. May 11, 2018); *see also In re Application of Action & Prot. Found.*, No. C 14–80076 MISC EMC (LB), 2014 WL 2795832, at *4 (N.D. Cal. June 19, 2014) (noting that the *Intel* factors "involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives").

**I.     The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782.**

**A.     Respondent Is Found In This District.**

Section 1782's statutory element that an entity "reside[s] or be found" in a district is satisfied when an entity is incorporated or headquartered in the district. *See Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215, 2020 WL

820327, at *3 (N.D. Cal. Feb. 19, 2020) ("A business entity is 'found' in the judicial district where it is incorporated or headquartered."); *In re Koninklijke Philips N.V.*, No. 17-MC-1681-WVG, 2018 WL 620414, at *1 (S.D. Cal. Jan. 30, 2018) ("Respondent maintains its principal place of business in San Diego, California, which is located within the Southern District of California."). Respondent is headquartered in San Diego and is thus "found" in this District. Cecere Decl. ¶ 19 n.27. Accordingly, the first statutory requirement is satisfied.

## B.    The Discovery Sought Is "For Use" In a Foreign Proceeding.

A Section 1782 application establishes the "for use" requirement by showing that the Requested Discovery may be submitted to and relied on by the foreign tribunal. "Thus, applicants must show that the material requested is tethered to a specific foreign proceeding and is relevant." *Qualcomm Inc. for an Ord. Pursuant to 28 U.S.C. § 1782*, No. 18-MC-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018); *see also In re Application of Murchinson Ltd.*, No. 2:23-mc-00191-SB-PD, 2024 WL 489175, at *2 (C.D. Cal. Jan. 26, 2024) ( "for use" element is satisfied where the applicant has shown that it has "the procedural right to submit the requested documents to the foreign tribunal" (internal citation omitted)). An applicant is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *In re Request for Jud. Assistance from the Seoul Dist. Crim. Ct.*, 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions of foreign law relating to . . . the admissibility before [foreign] tribunals of the testimony or material sought.").

As explained by Quadre's Cayman Islands counsel, the Requested Discovery may be submitted in the Appraisal Proceeding, Cecere Decl. ¶¶ 73-77, which is all that is required, *see Murchinson Ltd.*, 2024 WL 489175, at *2. The Cayman Court itself has indicated it anticipates and expects discovery relating to TuSimple's IPO to be used in the Appraisal Proceeding. Cecere Decl. ¶¶ 51, 55, 58, 59. For instance, the

Cayman Court held that the Directions Order should be revised so that "Tusimple events are temporally covered so that the experts and the Court can be as well informed as possible about the causes of those events." *Id.* ¶ 58, Ex. P, ¶ 66.

Following the Cayman Court's ruling that the scope of discovery includes documents post-dating the Valuation Date and until the date of TuSimple's IPO, *id.* ¶ 58, the fact that the Requested Discovery seeks documents post-dating the Valuation Date of December 23, 2020 would not prevent its use in the Appraisal Proceeding.

Further, the "for use" requirement is satisfied because the Requested Discovery is "directly relevant to the question" at issue in the Appraisal Proceeding, *i.e.,* the fair value of the dissenting shareholders' shares. *See Qualcomm*, 2018 WL 6660068, at *2. The true value of TuSimple as of the Valuation Date is likely to be a key issue at trial. Cecere Decl. ¶¶ 39, 40, 77. Given SINA's significant 20% stake in TuSimple, the value of TuSimple is highly relevant to calculating the value of SINA based upon a SOTP analysis. A SOTP analysis is often applied to companies such as SINA with diverse and distinct business lines or investments. Brokers valued SINA both before and after the merger proposal using a SOTP valuation that valued each of SINA's businesses and investments. Morgan Stanley also performed a SOTP valuation as part of its Fairness Opinion to assess the value of SINA. *Id.* ¶ 39. While Morgan Stanley valued the Company's 20% stake in TuSimple to be between $186 to $286 million, *id.* ¶ 20, TuSimple's IPO took place after the Valuation Date at a valuation of $8.49 billion, which would imply that the value of the Company's 20% stake in TuSimple alone was approximately $2.2 billion, *id.* ¶ 24. Given that the value of the entire Company (including TuSimple and all other investments) based on the Merger Price was $2.6 billion, *id.* ¶ 22, such a significant increase in TuSimple's value upon its IPO would clearly affect the value of the Company and thus, the fair value of SINA's shares held by the dissenting shareholders. Given that TuSimple's IPO was in progress at or around the date of the Merger, the Cayman Court found that TuSimple's IPO was foreseeable as of the Valuation Date and thus, was highly relevant to the valuation of

16

SINA.  *See* Cecere Decl. Ex. P ¶ 65 ("TuSimple transactions were foreseeable as at the Valuation Date" and "significant price-sensitive events which occur after the Valuation Date, and which were foreseeable are relevant to valuation as at the Valuation Date.").

Thus, the Requested Discovery is plainly "for use" in the Appraisal Proceeding. *See, e.g., In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 909 (N.D. Cal. 2022) (finding discovery sought for use in Cayman proceeding sufficient); *In re Application of Quadre Invs., L.P.*, No. 18-mc-00118, 2019 WL 1075274, at *2 (C.D. Cal. Jan. 7, 2019) (granting in part § 1782 application for discovery for use in Cayman Islands appraisal proceeding and noting that statutory factors were met).

**C.    Petitioners Are "Interested Persons."**

 "[L]itigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256.  Petitioners are claimants in the Appraisal Proceeding, Cecere Decl. ¶ 3, and thus are "interested persons."  *Koninklijke*, 2018 WL 620414, at *1 ("As a party to the ongoing litigation in the English court, Applicant is an 'interested party.'").

**II.    The *Intel* Factors Weigh In Favor of Discovery.**

**A.    *Intel* I: Respondent Is a Non-Participant in the Appraisal Proceeding.**

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. This is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.

Here, Respondent is not party to the Appraisal Proceeding, and thus will not be subject to party discovery in the Appraisal Proceeding.  *See, e.g.*, *In re Mireskandari*, No. 12-CV-2865-IEG (DHB), 2012 WL 12877390, at *3 (S.D. Cal. Dec. 20, 2012) (first *Intel* factor satisfied when respondent was "not subject to the English court's

jurisdiction"); *In re Omori*, No. 23-mc-80195-EJD, 2023 WL 5957172, at *3 (N.D. Cal. Sept. 12, 2023) ("Meta would not be a party in the contemplated Japanese civil proceeding, and therefore, the Japanese tribunal would be unable to compel Meta to produce discovery without the aid of § 1782.").

The Cayman Court will not have jurisdiction to compel discovery from Respondent, a non-party which is headquartered and incorporated in the United States. Cecere Decl. ¶¶ 63–64.  Under Cayman Islands law, parties are not obligated to produce documents from third parties that are not otherwise in their own "possession, custody or power." *Id.* ¶ 33.  Because TuSimple's documents are not within the Company's possession, custody, or power, the Company has not provided these documents in the Appraisal Proceeding.  *Id.* ¶ 33.

Further, as explained in the Cecere Declaration, the Requested Discovery seeks TuSimple's documents that cannot be obtained from the Company and are uniquely in the possession of Respondent, including internal documents and communications, its valuation analysis, and its communications with third parties who will not be parties to the Appraisal Proceeding.  *Id.* ¶¶ 65–66.  As Respondent is not party to the Appraisal Proceeding and Cayman law does not provide Petitioners any efficient means by which they can obtain the discovery sought in the Application, the first *Intel* factor weighs in favor of granting the Application

**B.    *Intel* II: Cayman Courts Are Receptive to the Requested Discovery.**

Under the second *Intel* factor, courts consider whether the "nature," "character," and "receptivity" of the foreign tribunal.  *Intel*, 542 U.S. at 244.  Courts in this Circuit hold that the burden is on respondents to show "authoritative proof" that a foreign tribunal would be unreceptive to evidence obtained pursuant to Section 1782. *See, e.g.*, *In re Nokia Techs. Oy*, No. 21MC1487 (MSB), 2022 WL 788702, at *2 (S.D. Cal. Mar. 15, 2022) ("[I]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery." (quoting *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d

907, 915 (N.D. Cal. 2019))); *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) ("[C]ourts look for 'authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782.'" (citation omitted)); *In re Illumina Cambridge Ltd.*, No. 19-mc-80215-WHO (TSH), 2019 WL 5811467, at *4 (N.D. Cal. Nov. 7, 2019) ("The second *Intel* factor weighs in favor of discovery unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence."). Petitioners need not establish the potential usefulness of the discovery, but merely show that "the foreign tribunal is willing to consider the information sought." *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016).

The Cayman Court will consider any evidence that bears on determining the fair value of a company's shares. *See* Cecere Decl. ¶¶ 73–75. Indeed, the Cayman Islands Court of Appeal, ("**CICA**"), whose decisions are binding on the Cayman Court, *see id.* ¶ 34, has underscored the importance of broad-ranging discovery in merger appraisal cases. *See id.* ¶ 45, Ex. H ¶ 257 ("*it is of fundamental importance, particularly in a management buyout, that companies give full disclosure of all documents relating to the sale process (including the market check) and the relevant communications with the financial advisers. . . .The most effective way in which this can be ensured is if the company knows that inferences are likely to be drawn against it if it fails to be entirely open and transparent*."). This extends to discovery obtained under Section 1782, which the CICA has expressly held "is a right conferred by U.S. law—it is not a right conferred by, or *to be withheld under Cayman law*." *Id.* ¶ 68 & Ex. T, ¶ 57 (emphasis added). Accordingly, Cayman courts have specifically held that a Section 1782 application can be used to obtain discovery for use in Cayman Islands proceedings. *Id.* ¶ 69.

Multiple U.S. courts have also recognized that Cayman courts are receptive to evidence obtained through Section 1782. *See, e.g.*, *In re Hopkins*, No. 20-mc-80012-

19

SVK, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (finding no indication Cayman Islands court would not be receptive to the information sought); *In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 912 (N.D. Cal. 2022) ("Grand Court is clearly receptive to assistance in discovery from the United States."); *Laggner v. Parsa*, No. 3:22-mc-80328-WHO, 2023 WL 163579, at *3 (N.D. Cal. Jan. 11, 2023) (citing "no evidence the Cayman Islands proceeding would reject the evidence" and "several cases showing that courts in the Cayman Islands are generally receptive to evidence obtained via § 1782."); *In re FourWorld Event Opportunities LP*, No. MC-22-00055-PHX-DWL, 2023 WL 155863, at *2 (D. Ariz. Jan. 11, 2023) (finding this factor satisfied because "Petitioners have submitted evidence that the Cayman Court is familiar with and receptive to evidence gather through § 1782 applications").

Here, the Cayman Court is receptive to the Requested Discovery as obtained through Section 1782. In the Appraisal Proceeding itself, the Directions Order issued by the Cayman Court anticipates and allows the parties to seek to obtain third party discovery under Section 1782. *See* Cecere Decl. ¶ 71. For instance, the Cayman Court has been notified of other Section 1782 applications brought by Petitioners in support of the Appraisal Proceeding and has never objected to those applications or excluded any discovery sought through those applications. *See id.* ¶ 72.

The Report and Recommendation's primary reason for finding the second *Intel* factor weighed against granting discovery was based on the Court's conclusion that the Cayman Court would not be receptive to discovery that "exceeds the limits the Cayman Court set." *In re Oasis Focus Fund LP*, 2022 WL 17669119, at *11. The Report and Recommendation found that the Prior Application exceeded the limits the Cayman Court set by "seeking discovery beyond the Valuation Date without any expert request." *Id.* Given the recent Cayman Court rulings confirming (1) the relevancy of TuSimple's IPO and (2) that the scope of discovery relating to TuSimple's IPO now includes the time period after the Valuation Date and until the IPO Date, the Cayman Court would be receptive to the Requested Discovery sought

20

here. There is no longer any basis to argue that the Requested Discovery is "an attempt to obtain information unrelated to valuation and after the Cayman Court's December 23, 2020 date." *Id.* at *11. The Cayman Court has ruled that discovery is allowed beyond the Valuation Date with respect to documents relating to the "value of [the Company's] investments" and "the IPO and pre-IPO funding of TuSimple." *See* Cecere Decl. ¶¶ 50, 51, Ex. P ¶¶ 65, 66. In a subsequent ruling, the Cayman Court confirmed that "the Court expanded the scope of discovery of documents to include documents relevant to price sensitive events for the period up to and including the merger completion date and until the date of the TuSimple initial public offering (IPO)." *See id.* ¶ 59, Ex. Q ¶ 12. The Requested Discovery seeks targeted documents that relate to TuSimple's IPO, which the Cayman Court deems relevant to the valuation of SINA, and thus the fair value of the dissenting shareholders' shares. *See* Cecere Decl. Ex. P ¶¶ 66, 71 ("*Tusimple* events are temporally covered" "so that the experts can review that material and explain to the Court how and, if so, to what extent the IPO of *TuSimple* in April 2021 is relevant to the assessment of the fair value of the Dissenters' shares.").

Accordingly, the Cayman Court will accept and consider the Requested Discovery here, given its relevance in determining the fair value of the Petitioners' SINA shares. *See id.* ¶¶ 39–40, 77.

### C. *Intel* III: Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. In *Intel*, the Supreme Court rejected the notion that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself. *Id.* at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts.").

21

Rather, "'[P]roof-gathering restrictions' are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials." *In re Application of Credit Suisse Virtuoso SICAV-SIF In Respect of the Sub-Fund Credit Suisse (Lux) Supply Chain Fin. Fund*, No. 21-MC-80308-JCS, 2022 WL 1786050, at *11 (N.D. Cal. June 1, 2022) (quoting *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015)) (emphasis and alteration in original); *see also In re Hattori*, No. 21-mc-80236-TSH, 2021 WL 4804375 at *4 (N.D. Cal. Oct. 14, 2021) ("The question under this prong is whether the foreign court would be affronted by the applicant's resort to U.S. discovery."). No such prohibition exists here. Accordingly, "the Court is not required to determine whether the evidence obtained from [Respondent] would be discoverable or admissible in the [foreign] proceedings." *Mireskandari*, 2012 WL 12877390, at *3 ("[M]uch of the parties' arguments . . . relate to whether the evidence would be admissible in the foreign proceedings and, even less important to this Court, whether the evidence provides a substantive basis for overturning the Tribunal's decision. Such issues are appropriately suited for the English courts.").

Petitioners are not attempting to circumvent any foreign proof-gathering restrictions. To the contrary, as the Cecere Declaration explains, "Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. Accordingly, there is no requirement to obtain permission from the [Cayman Court] before seeking relevant evidence abroad, including through Section 1782 applications." Cecere Decl. ¶ 70. Nor does Cayman Islands law prohibit Section 1782 discovery and litigants in Cayman proceedings may exercise any rights they have under Section 1782 to obtain relevant evidence. *Id.* ¶¶ 67–69. Cayman Island courts have stated that "all documents which *may be relevant* to the valuation of the shares at issue … *should* be provided." *Id.* ¶ 34 (emphasis added). Further, the Cayman Court presiding over the underlying Appraisal Proceeding specifically anticipated that the parties would seek to obtain third party discovery under Section 1782 and has not objected to any prior Section 1782 applications made nor excluded any discovery

sought from those applications. *See id.* ¶¶ 71, 72.  The Cayman Court also specifically found that the Requested Discovery sought here—documents relating to TuSimple's IPO that post-date the Valuation Date—was "necessary for fairly dealing with the central issue in this case".  *See id.* ¶ 58, Ex. P ¶ 71.  Thus, rather than circumventing Cayman Islands proof-gathering restriction, Petitioners' Application seeks to assist the Cayman Court's determination of the fair value of Petitioners' former shareholdings. *Id.* ¶¶ 44–46.

In addition, there is no "quasi-exhaustion requirement," *i.e.*, any requirement that Petitioners first seek the discovery in the foreign court. *See, e.g.*, *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, 2020 WL 820327, at *6 (no exhaustion requirement); *de Leon v. Clorox Co.*, No. 19-mc-80296-DMR, 2020 WL 4584204, at *8 (N.D. Cal. Aug. 10, 2020) (no requirement to first seek discovery in foreign tribunal); *In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*, No. C18-1673JLR, 2019 WL 291673, at *5 (W.D. Wash. Jan. 23, 2019) ("[A]n applicant need not exhaust, or even commence, its discovery efforts in the foreign proceeding before resorting to § 1782.").

Therefore, the third *Intel* factor weighs in favor of granting the Application.

**D.    *Intel* IV: The Subpoena Is Not Unduly Burdensome.**

The discovery sought by Petitioners is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  The standard is substantially the same as in domestic civil litigation under the Federal Rules of Civil Procedure. *See de Leon v. Clorox Co.*, No. 19-MC-80296-EMC, 2021 WL 718840, at *4 (N.D. Cal. Feb. 24, 2021) (Section 1782 "authorizes discovery to proceed in accordance with the Federal Rules of Civil Procedure").

*First*, the Subpoena is tailored to seek only documents and information directly relevant to critical issues in the Appraisal Proceeding: information about the valuation of TuSimple leading up to the Merger, including TuSimple's IPO, which was in progress at or around the date of the Merger.  Given the significance of TuSimple to

the Merger because of the timing of its IPO and SINA's significant investment in TuSimple, there can be no serious dispute as to the relevance of the discovery sought or the proportionality of this discovery in the context of the multi-billion-dollar underlying transaction being contested in the Appraisal Proceeding. The Cayman Court itself has confirmed the relevancy of the Requested Discovery and has requested additional discovery to understand "to what extent the IPO of TuSimple in April 2021 is relevant to the assessment of the fair value of the Dissenters' shares in the Company." Cecere Decl. ¶ 58, Ex. P ¶ 71. The accompanying declaration of Cayman Islands counsel also confirms that the discovery sought by Petitioners "will be used by and will assist the experts retained by the Dissenting Shareholders (including Petitioners) and the Company, as well as the Grand Court itself, to determine the fair value of the Company's shares." Cecere Decl. ¶ 77. The Requested Discovery seeks TuSimple's documents that cannot be obtained from the Company, *id.* ¶ 33, including internal TuSimple documents and its communications with third parties who will not be parties to the Appraisal Proceeding. *Id.* ¶¶ 61, 65, 66.

*Second*, the discovery requests are temporally limited, covering a 5-month period from December 1, 2020 to April 15, 2021.

*Third*, the Subpoena does not seek deposition testimony, which significantly reduces any burden concerns.

*Fourth*, Petitioners are willing to meet and confer with Respondent to address any scope or burden concerns. If the Court has remaining concerns about undue burden, granting the Application need not preclude Respondent from bringing a motion to quash or modify the discovery sought.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant its petition for an order pursuant to 28 U.S.C. § 1782.

Dated: August 7, 2024

Respectfully submitted,

By:  __/s/ Marc S T Dworsky__

**REID COLLINS & TSAI LLP**
Marc S T Dworsky (#157413)
4450 Via Alegre
Santa Barbara, CA 93110
Telephone: (213) 429-4022
Email: mdworsky@reidcollins.com

Jonathan M. Kass*
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
Telephone: (302) 467-1765
Email: jkass@reidcollins.com

Yonah Jaffe*
420 Lexington Avenue, Suite 2731
New York, NY 10170
Telephone: (212) 344-5200
Email: yjaffe@reidcollins.com

**PALLAS PARTNERS (US) LLP**
Duane L. Loft*
Jingxi Zhai*
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Email: Duane.Loft@pallasllp.com
Email: Jingxi.Zhai@pallasllp.com
*Pro hac vice applications forthcoming

*Attorneys for Petitioners*

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING