UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF QUADRE INVESTMENTS, L.P. AND OASIS FOCUS FUND LP, PETITIONERS, FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING. | Case No.:  24-mc-1341-MMP<br><br>**REPORT AND RECOMMENDATION RE PETITIONERS' APPLICATION FOR DISCOVERY UNDER 28 U.S.C. § 1782**<br><br>[ECF No. 1] |

Pending before the Court is Quadre Investments, L.P. ("Quadre") and Oasis Focus Fund LP's ("Oasis") (collectively, "Petitioners") Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding ("the Application"). [ECF No. 1.] This Report and Recommendation is submitted to Chief United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636.[1] For the reasons discussed below, the undersigned **RECOMMENDS** Petitioners' Application be **DENIED**.

---

[1] The Ninth Circuit has recognized applications for court-ordered discovery pursuant to 28 U.S.C. § 1782 are dispositive matters. *CPC Patent Techns. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807–08 (9th Cir. 2022) (hereinafter "*CPC I*").

## I.    INTRODUCTION AND BACKGROUND

This is Petitioners' third § 1782 application seeking discovery regarding the value of Respondent TuSimple Holdings, Inc. ("TuSimple"), a California-based self-driving truck technology company, at the time of its initial public offering ("IPO") in April 2021. Petitioners seek to use the requested discovery in a foreign shareholder Appraisal Proceeding pending in the Grand Court of the Cayman Islands ("the Cayman Court").[2] [ECF No. 1-1; ECF No. 20 at 7, 24–25.] The purpose of the Appraisal Proceeding is to determine the fair value of shares of SINA Corporation ("SINA"), a technology company incorporated under the laws of the Cayman Islands with its primary business lines operating in the People's Republic of China ("PRC"), after it was acquired by a majority shareholder and taken into private ownership through a merger approved by SINA shareholders. [ECF No. 1-5 ¶¶ 8–9, 23, 27–30.] At the time of SINA's valuation, SINA had an ownership interest in TuSimple. [*Id.* ¶ 19; ECF No. 20 at 7.] As former SINA shareholders, Petitioners are parties to the Appraisal Proceeding where they (along with other Dissenting Shareholders) argue the price for their holdings in SINA was severely undervalued, as evidenced by the value of TuSimple at the time of its IPO. [ECF No. 1-5 ¶¶ 6, 27–30.] Through this § 1782 Application, Petitioners seek a court order requiring TuSimple, a non-party, to produce seven categories of documents regarding its IPO Petitioners claim will be used by their valuation expert in the Appraisal Proceeding. [ECF No. 1.]

### A.    SINA Merger and the Appraisal Proceeding

Prior to the Merger, SINA was a publicly traded company. [ECF No. 1-5 ¶ 8.] In July 2020, SINA received a preliminary, non-binding proposal to be acquired by New

---

[2] For simplicity, the Court uses the same abbreviations as the parties used in their briefing. Accordingly, the Court refers to the Grand Court of the Cayman Islands as "the Cayman Court" and the underlying shareholder appraisal proceedings as the "Appraisal Proceeding." Additional abbreviations are used throughout this Recommendation consistent with the parties' briefing.

Wave MMXV Limited and its affiliated entities ("New Wave") at a price of $41 per share. [*Id.* ¶¶ 11, 14.] At the time, SINA's CEO and Chairman of the board of directors was Charles Guowei Chao, who was also the sole owner and director of New Wave. [*Id.* ¶¶ 10–11.] He also served as a member of TuSimple's board of directors. [*Id.* ¶ 19.] SINA appointed a Special Committee consisting of "independent and disinterested" board members to consider the Merger. [*Id.* ¶ 15.] The Special Committee engaged Morgan Stanley Asia Limited ("MSAL") as its financial advisor with respect to the Merger. [*Id.* ¶ 16.] Ultimately, the Special Committee and New Wave agreed to a purchase price of $43.30 per share. [*Id.* ¶ 18.]

In September 2020, MSAL issued an opinion to the Special Committee finding the Merger Price of $43.30 per share was fair. [*Id.*¶ 19.] This Fairness Opinion considered SINA's value using seven different valuation methods: (1) the historical trading range for SINA stock, (2) the range of broker target prices, (3) the price of comparable companies, (4) the price of precedential transactions, (5) a "sum of the parts" computation, (6) a leveraged buyout analysis, and (7) a leveraged recapitalization analysis. [ECF No. 20 at 8.] In its "sum of the parts" analysis, MSAL sought to value SINA's various business lines and long-term investments, including TuSimple. [ECF No. 1-5 ¶ 20.] The Fairness Opinion mentioned TuSimple only once and only in connection with the "sum of the parts" analysis. [ECF No. 20 at 9.] MSAL estimated SINA's interest in TuSimple to be worth between $186 million and $288 million. [ECF No. 1-5 ¶ 20.] SINA then announced it had entered into a Merger Agreement through which SINA would be acquired by New Wave and, in effect, Chao. [*Id.* ¶¶ 21–22.] In addition, on the effective date of the Merger, SINA's ordinary shares would be canceled in exchange for the right to receive $43.30 per share. [*Id.*] Based on the share price, SINA was valued at $2.6 billion. [*Id.* ¶ 22.]

On December 23, 2020, SINA held an extraordinary general meeting of shareholders ("EGM") at which the Merger was approved. [*Id.* ¶ 23.] Petitioners dissented. [*Id.* ¶¶ 6–7.] On the same day, TuSimple filed a confidential draft registration statement with the Securities and Exchange Commission. [*Id.* ¶ 24.] TuSimple went public on April 15, 2021

24-mc-1341-MMP

(hereinafter "TuSimple IPO Date"). [*Id.*] TuSimple's IPO took place at a valuation of $8.49 billion. [*Id.*]

In May 2021, the Appraisal Proceeding was commenced pursuant to Section 238 of the Companies Act of the Cayman Islands to determine the fair value of the Dissenting Shareholders' shares in SINA. [*Id.* ¶¶ 3, 27–30.]

### B. Procedural History in This Court

In January 2022, Petitioners filed their first § 1782 application in this District against TuSimple in connection with the Appraisal Proceeding.[3] On December 14, 2022, the Honorable Bernard G. Skomal issued a Report and Recommendation recommending the discovery be denied. *In re Oasis Focus Fund LP*, No. 22-mc-0112-BGS, 2022 WL 17669119, at *1 (S.D. Cal. Dec. 14, 2022). Petitioners subsequently withdrew the application pursuant to Federal Rule of Civil Procedure 41. [*In re Oasis Focus Fund LP*, No. 22-mc-0112-BGS, ECF No. 30.]

A few months later, Quadre filed a § 1782 application seeking to depose TuSimple's Chief Financial Officer who served from December 23, 2020 until July 7, 2022 related to the same Appraisal Proceeding. [*In re Quadre Invs., L.P.*, No. 23-mc-00795-DMS-KSC, ECF No. 1.] On October 27, 2023, the Honorable Karen S. Crawford issued a Report and Recommendation, inter alia, recommending the application be denied. *In re Quadre Invs., L.P.*, No. 23-mc-00795-DMS-KSC, 2023 WL 7128464, (S.D. Cal. Oct. 27, 2023). Quadre subsequently withdrew that application. [*In re Quadre Invs., L.P.*, No. 23-mc-00795-DMS-KSC, ECF Nos. 31, 32.]

Now, Petitioners try for a third time. [ECF No. 1.] Petitioners contend this Application is different because on June 3, 2024, the Cayman Court issued a ruling Petitioners contend confirmed discovery post-dating December 23, 2020 relating to

---

[3] Quadre's application, *In re Application of Quadre Investments, L.P.*, No. 22-mc-0156-BGS (S.D. Cal.), was consolidated with Oasis' application, *In re Oasis Focus Fund L.P.*, No. 22-mc-0112-BGS (S.D. Cal.).

TuSimple's IPO is relevant to the Appraisal Proceeding and discoverable. [ECF No. 1-1 at 14–18.] According to Petitioners, the June 3, 2024 ruling "remov[es] a key basis" for the Court's denial of the prior application for discovery from TuSimple and justifies Petitioners' request for the seven categories of documents sought in this Application. [*Id.* at 17–18.] After filing the Application with this Court on August 7, 2024, Petitioners sought an expedited briefing schedule on the Application based on impending deadlines in the Appraisal Proceeding. [ECF No. 7.] The Court directed Petitioners to serve both the initial Application and the expedited briefing request on TuSimple and provided TuSimple an opportunity to respond in opposition to the briefing request. [ECF No. 8.] The Court then denied Petitioners' request for expedited briefing finding, inter alia, Petitioners waited over two months to file the Application in this Court and ordered TuSimple to file a response to the Application. [ECF No. 17.] TuSimple subsequently opposed the Application, and Petitioners replied. [ECF Nos. 20, 21.] The Court found the motion suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). [ECF No. 17.]

### C.    This Application

Petitioners now seek production of the following documents from TuSimple:

1.    All Documents and Communications Concerning the valuation or pricing of the IPO between You and (i) Shanker or any research analyst (ii) Morgan Stanley, Citigroup, JPM, or any investment bank.

2.    All internal Documents and Communicated [sic] provided to the Board Concerning the valuation or pricing of the IPO, Including meeting minutes and presentations.

3.    All internal Documents and Communications Concerning TuSimple's cash flow projections.

4.    All internal Documents and Communications Concerning the IPO roadshow.

5.    All Documents and Communications Concerning the pre-IPO investor education process, Including testing the water meetings and the analyst day presentation.

6. All Documents and Communications Concerning Hennessy Capital's valuation of TuSimple and Hennessy Capital's interest in a potential or intended SPAC IPO of TuSimple. For the purposes of this request, the relevant time frame is July 1, 2020 – April 15, 2021.

7. All Documents and Communications Concerning the IPO between You and (i) New Wave, (ii) Chao, (iii) Zhang, or (iv) any of their Representatives.

[ECF No. 1-3 at 9.] The instructions accompanying the proposed subpoena provide "[u]nless otherwise specified, each request pertains to the period of December 1, 2020 through April 15, 2021." [*Id.* ¶ 10.] Petitioners characterize the discovery sought as "concerning [TuSimple's] IPO and the fair value of SINA's shares," which Petitioners contend are "core issues in the Appraisal Proceeding." [ECF No. 1-1 at 7.] In support of the Application, Petitioners provide a declaration from counsel stating the discovery sought "will be used by the parties' valuation expert" and "must be received as soon as possible to ensure that the experts retained by both the Dissenting Shareholders and the Company have sufficient time to review and incorporate into their expert reports." [ECF No. 1-1 at 16; ECF No. 1-5 ¶ 79.]

## II.    LEGAL STANDARD

"Under 28 U.S.C. § 1782, a district court may permit discovery for use in a foreign proceeding." *CPC Pat. Techns. Pty Ltd. v. Apple Inc.*, 119 F. 4th 1126, 1129 (9th Cir. 2024) (hereinafter "*CPC II*"). "28 U.S.C. § 1782 authorizes, but does not require, federal district courts to assist in the production of evidence for use in a foreign or international tribunal." *Khrapunov v. Prosyankin*, 931 F.3d 922, 923 (9th Cir. 2019). To be eligible for discovery under this section, the applicant must satisfy three statutory requirements at the outset: (1) "the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made[,]" (2) "the discovery is 'for use in a proceeding in a foreign or international tribunal[,]'" and (3) "the application is made by a foreign or international tribunal or 'any interested person.'" *Id.* at 925 (quoting 28 U.S.C. § 1782(a)); *see CPC II*, 119 F.4th at 1129.

24-mc-1341-MMP

Importantly, "[e]ven where an applicant satisfies § 1782's statutory prerequisites, the district court still retains substantial discretion to permit or deny the requested discovery." *CPC I*, 34 F.4th at 804 (quoting *Khrapunov*, 931 F.3d at 926). The following four non-exclusive *Intel* factors guide the district court's discretion:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the discovery requests are "unduly intrusive or burdensome."

*CPC II*, 119 F.4th at 1129 (quoting *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 264–65 (2004)). "The party seeking the discovery bears the burden of establishing that the statutory requirements are met." *In re Oh*, No. 22-mc-1649-DDL, 2023 WL 2890155, at *1 (S.D. Cal. Apr. 11, 2023).

## III.    DISCUSSION

The crux of Petitioners' Application is this Court's reasoning in the prior Recommendation no longer applies in light of the Cayman Court's June 3, 2024 ruling. Accordingly, the Court summarizes both the relevant aspects of Judge Skomal's Recommendation to deny the prior application as well as the Cayman Court's June 3, 2024 ruling before addressing the Application at hand.

As set forth below, this Court concludes while the "for use" eligibility requirement under § 1782 is now satisfied, the four *Intel* factors weigh against granting the Application. *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) ("The absolute requirements under § 1782 are only part of the story, however. The courts have stressed that, even if those requirements are met, a district court still retains the discretion to deny a request.").

### A.     Judge Skomal's Report and Recommendation

On December 14, 2022, Judge Skomal recommended Petitioners' subpoena to TuSimple be quashed.[4] The Court found the "for use" statutory requirement was not met, and even if it were, the Court would still not order the discovery based on the discretionary *Intel* factors. *In re Oasis Focus Fund LP*, 2022 WL 17669119, at *1, *7.

First, considering the "for use" requirement of § 1782, Judge Skomal found the Cayman Court set the valuation date to be December 23, 2020, the date of the EGM, and thus "limited fact discovery to a five-year period ending on the valuation date." *Id.* at *3. Based on the Cayman Court's then-operative Directions Order regulating discovery in the Appraisal Proceeding, Judge Skomal found "the Cayman Court expressly states that enhancement of the value of the shares by reference to events that occur after the EGM has no part in the calculation" and therefore "[t]o the extent Petitioners are requesting discovery that concerns TuSimple post-EGM, it is foreclosed by the Cayman Court." *Id.* at *5.

Judge Skomal recognized the Cayman Court "carved out an exception" permitting an expert to request materials produced after the valuation date. *Id.* at *3. The Court explained "[t]he Cayman Court's limitations indicate to this Court that fact discovery post-valuation date would not be allowed unless an expert so requests." *Id.* at *4 ("The only means of injecting the subpoenaed discovery into evidence would be through Petitioners' expert(s) as part of his/her valuation method."). It found Petitioners had not offered expert requests in support of their subpoenaed discovery and thus "failed to connect the requested discovery to an expert's valuation method." *Id.* at *6.

Relying on the Cayman Court's statement "the valuation in the context of section 238 is a *non-conduct specific, accounting/valuation-led exercise*," Judge Skomal found the valuation process in the Appraisal Proceeding was limited accordingly. *Id.* at *5 (emphasis in original). Judge Skomal reasoned "[a]lthough the Cayman Court left open its discovery

---

[4] The procedural posture was the court ruling on TuSimple's motion to quash a subpoena served pursuant to §1782.

24-mc-1341-MMP

deadline to expert-requested discovery" and "[i]nformation requests post valuation date can be made if the expert considered the information necessary[,]" Petitioners had not produced any expert requests for the subpoenaed discovery. *Id.* at *5. The Court explained:

> Petitioners have failed to connect the requested discovery to an expert's valuation method. As indicated above, the Petitioners have not provided any expert requests for this discovery. Nor have Petitioners even explained how an expert would utilize the discovery requested in his/her valuation method(s). Therefore, taking into account that the experts decide the valuation methods which the Cayman Court will heavily rely upon, and the Petitioners' failure to provide any expert requests for the subpoenaed discovery, the subpoenaed discovery is also not proportional to resolving the valuation issue.

*Id.* at *6. Thus, the Court found the "for use" statutory requirement was not met. *Id.* at *7. Notably, the Court recognized it likely would have found the "for use" requirement met "if Petitioners had an expert request that permitted this discovery beyond the Valuation Date and an expert explanation that provided a connection between these discovery requests and a sum-of-the-parts analysis that might actually be used[.]" *Id.* at *6 n.9.

Next, Judge Skomal found even if the "for use" requirement was satisfied, the Court "would still not order the discovery based on the discretionary factors." *Id.* at *7. Judge Skomal found the first *Intel* factor weighed against requiring TuSimple to produce the requested discovery under § 1782 "at least as to the discovery that might be obtained publicly or from SINA." *Id.* at *9. The Court reasoned Petitioners were seeking discovery from an entity that was not a party to the Appraisal Proceeding without sufficient explanation why the discovery was unobtainable absent § 1782 assistance. *Id.*

Judge Skomal found the second and third factors weighed generally against ordering the requested discovery to the extent the requests seek discovery that would be subject to this PRC approval process. *Id.* at *12. However, these factors weighed in favor of ordering production "to the extent the discovery requests [did] not implicate this approval process and [were] otherwise not in conflict with the Cayman Court's rulings[.]" *Id.*

Finally, the Court found the last factor also weighed against ordering the requested discovery because the requests were not narrowly tailored, in part because they sought

24-mc-1341-MMP

information beyond the December 23, 2020 valuation date. *Id.* at *13–14. The Court also assumed the "the single reference and the simple fact that SINA was a large shareholder of TuSimple" was a basis to seek some discovery from TuSimple, explaining "[i]f SINA's share price was based in part on the value of TuSimple, then information on the value of TuSimple might be relevant to the Cayman Court's valuation." *Id.* at *13. However, the Court noted "Petitioners have not provided an explanation from an expert how these broad requests would even relate to a sum-of-the-parts analysis." *Id.* at *14.

Overall, Judge Skomal found "the four *Intel* factors weigh[ed] against granting the discovery even if the for use requirement were met[.]" *Id.*

## B.    The Cayman Court's June 3, 2024 Ruling

On June 3, 2024, the Cayman Court issued its ruling in the Appraisal Proceeding that Petitioners contend provides the basis for this Application. At the outset, the Cayman Court reiterated the discovery process applicable in the Appraisal Proceeding as follows:

> As to the nature and scope of the Company's discovery obligations, the Court once again notes the fundamental importance of a company's disclosure obligations in s.238 cases. That is the information bank from which the experts can perform their analyses and the Court can be assisted in its task at arriving at the fair value of the Dissenters' shares.
>
> As an expert driven process, the Court relies heavily on the independent and objective expert opinions of specialist valuers. Valuation experts are in the best position to identify and request relevant documents to their determination of fair value (which, as has been confirmed by numerous s.238 cases, includes documents created after the valuation date). They are best placed to determine what information they wish to rely on in support of their valuation methodologies. That autonomy should not be abused, and the Court will be alive to the arguments concerning the "tyranny of experts" and the "weaponisation of discovery". It will be the Court that is the ultimate arbiter of the fair value, assisted by the experts, whose views it may accept or reject, partially or entirely.

[ECF No. 1-26 ¶¶ 61–62 (citations omitted).]

The Cayman Court explained "significant price-sensitive events which occur after the Valuation Date, and which were foreseeable are relevant to valuation as to the

Valuation Date." [*Id.* ¶ 65.] It then found in its preliminary view, the TuSimple transaction was "foreseeable as at the Valuation Date." [*Id.*] As a result, the Cayman Court varied its Directions Order in effect at the time in two ways. First, it expanded the relevant time period to include TuSimple's IPO Date as follows:

> [T]o the extent that the Weibo and *Tusimple* [sic] events are temporally covered so that the experts and the Court can be as well informed as possible about the causes of those events . . . The experts will then be able to assist the Court on the effect, if any, of those events on the valuation process. The Court will then assess if, and if so how, the outcome of their views affects the fair value of the Dissenters' shares.

[*Id.* ¶ 66.] Second, the Cayman Court required SINA to provide expanded disclosures:

> [T]he Company should give discovery of all additional documents prepared or created from the Valuation Date to the Completion Date, which *are related to price sensitive events that may have had an impact on the value of the company as at the Valuation Date* and are relevant to the determination of the fair value of the Dissenters' shares in the Petitioner as at the Valuation Date.

[*Id.* ¶ 67 (emphasis in original).] The Cayman Court expressly rejected SINA's argument post-valuation date information is "at best irrelevant" explaining:

> It would appear . . . the Dissenters already have a considerable amount of information and documentation that relates to the *TuSimple* IPO and which appears likely to be relevant to the assessment of the fair value of the Dissenters' shares as at the date of the EGM.

[*Id.* ¶¶ 68, 70.] The Cayman Court then provided explicit procedural guidance on the expert-driven process:

> However, it is in the Court's view necessary for fairly dealing with the central issue in this case, namely the fair value of the Dissenters' shares, for the Company to provide the further disclosure ordered by the Court. That is so that the experts can review that material and explain to the Court how and, if so, to what extent the IPO of *TuSimple* in April 2021 is relevant to the assessment of the fair value of the Dissenters' shares in the Company as at the Valuation Date.

24-mc-1341-MMP

It follows, as the CICA recognised, that the determination of the Valuation Date is a substantive issue in relation, not only to the date at which fair value is to be assessed, but it is also in most cases relevant to the scope of the discovery which the Company should be required to give.

The Court acknowledges that the experts are also able to use the Information Request process to ask for further and better information having first obtained and reviewed the Company's disclosure. However, they are not to be tasked with asking questions without the relevant disclosure . . . It is well-established that the primary means by which documents are produced in s.238 proceedings is through discovery, with Information Requests operating as a useful follow up procedure.

[*Id.* ¶¶ 71–73 (citations omitted).]

Finally, the Cayman Court observed "Professor Yilmaz[5] says that without further disclosure he would be unable to formulate Information Requests in anything more than the most general terms." [*Id.* ¶ 74 (citation omitted).] The Cayman Court agreed, explaining "in all the circumstances it would be unjust for the Company to be able to avoid disclosure of relevant post-Valuation Date material on the ground that Professor Yilmaz has not first established that such material exists." [*Id.*]

## C.    Analysis

The parties do not dispute TuSimple "resides or is found" in this District or Petitioners are an "interested person" for purposes of § 1782. [ECF No. 20.] Accordingly, at issue is whether the for use statutory requirement of § 1782 is met and, if so, whether the discretionary *Intel* factors support granting the Application. This Court finds while the

---

[5] Professor Bilge Yilmaz is the Dissenting Shareholders' appointed valuation expert for trial in the Appraisal Proceeding. [ECF No. 1-26 ¶¶ 20, 25.] Professor Yilmaz submitted an Affidavit dated March 29, 2024 in support of the application on which the Cayman Court issued the June 3, 2024 ruling. [*Id.* ¶ 20.]

for use requirement under § 1782 is met, the four *Intel* factors weigh in favor of denying the Application.

### 1.    For Use Requirement

Petitioners assert the for use requirement is met because they need only show the discovery sought "may be submitted to and relied on by the foreign tribunal" and are "not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings." [ECF No. 1-1 at 20.] Petitioners contend the June 3, 2024 ruling modified the scope of discovery to include documents through TuSimple's IPO Date; thus, Petitioners could now use discovery post-dating the December 23, 2020 valuation date in the Appraisal Proceeding. [*Id.* at 21.] Relying on a declaration from counsel, Petitioners represent generally the discovery sought "will be used by the parties' valuation expert as well as the Cayman Court in the Appraisal Proceeding in evaluating the Merger and determining the fair value of Petitioners' shares in SINA." [*Id.* at 16.] Petitioners also assert the requested discovery is directly relevant to determining the fair value of SINA shares because "[t]he true value of TuSimple as of the Valuation Date is likely to be a key issue at trial." [*Id.* at 21.] Petitioners further represent "[t]he Cayman Court will accept and consider the Requested Discovery here" and even go so far as to assert "[t]he Cayman Court itself has indicated it anticipates and expects discovery relating to TuSimple's IPO to be used in the Appraisal Proceeding." [ECF No. 1-1 at 20, 26.]

In opposition, TuSimple contends Petitioners have failed to meet their statutory burden for establishing the for use requirement—in particular, Petitioners fail to establish the information sought is relevant. [ECF No. 20 at 13–15.] According to TuSimple, the Cayman Court's June 3, 2024 ruling at most establishes information about the value of SINA's investment in TuSimple, which is in SINA's possession, custody, or control, may be relevant to the valuation analysis. [*Id.* at 13–14.] TuSimple asserts Petitioners have failed to explain how the discovery sought relates to the value of SINA's investment in TuSimple or how they will use the information in the Appraisal Proceeding. TuSimple contends Petitioners have failed to submit evidence showing the discovery was specifically

requested by Petitioners' valuation expert, but instead have only submitted a declaration from their attorney who states in his view it is "highly likely" the expert will rely on this information for his valuation analysis. [ECF No. 20 at 6, 14–15 (citing ECF No. 1-5 ¶ 39).]

The for use requirement "focuses on the practical ability of an applicant to place a beneficial document . . . before a foreign tribunal." *Qualcomm Inc.*, No. 18-mc-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018). "The applicant must be in a 'position to have the [tribunal] consider that evidence' or have some 'means of injecting the evidence into the proceeding' to 'use' the evidence." *In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, No. 18-mc-0037-UA-SS, 2018 WL 2146412, at *6 (C.D. Cal. May 9, 2018) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017)). "To be 'for use' in a foreign proceeding, the information sought must be relevant, and courts should be 'permissive' in interpreting that standard." *In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 908 (N.D. Cal. 2022).

However, "a request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement[.]" *Lufthansa Technik AG v. Thales Avionics, Inc.*, No. 22-mc-00034-JVS-KES, 2024 WL 3996618, at *11 (C.D. Cal. Aug. 2, 2024), *report & recommendation adopted*, No. 22-mc-00034-JVS-KES, 2024 WL 3993847 (C.D. Cal. Aug. 29, 2024) (emphasis omitted) (quoting *In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018)). "The party issuing the subpoena has the burden of demonstrating the relevance of the information sought." *U.S. v. Google LLC*, 690 F. Supp. 3d 1011, 1018 (N.D. Cal. 2023) (citation omitted).

The Cayman Court's June 3, 2024 ruling varied the Directions Order in the Appraisal Proceeding in two ways. First, it expanded the relevant time period so TuSimple's IPO Date was "temporally covered so that the experts and the [Cayman] Court can be as well informed as possible about the causes of those events." [ECF No. 1-26 ¶ 66.] Second, it required SINA, "as a matter of fairness" to produce "all additional documents prepared or created from the Valuation Date to the Completion Date, which *are related to price sensitive events that may have had an impact on the value of the company as at the*

*Valuation Date*" including the TuSimple IPO. [*Id.* ¶¶ 66, 67.] While TuSimple's argument focuses on the latter variation requiring SINA to produce additional documents in its possession, the Court finds the Cayman Court also expressly modified the temporal scope of discovery to include documents up to TuSimple's IPO Date. [*Id.*] The Cayman Court confirmed this expansion of the relevant time period in its subsequent order dated July 5, 2024. [ECF No. 1-27 ¶ 14 ("The Directions Order was varied so that the period in relation to which the Company was to provide discovery was to include the period . . . during which the TuSimple IPO occurred so that the experts and the Court can be as well informed as possible about the causes of those events.")]. Though TuSimple is correct the June 3, 2024 ruling does not expressly address discovery beyond SINA, the Cayman Court's focus on SINA's discovery obligations is consistent with the discovery procedure in section 238 cases. Indeed, the Cayman Court "once again note[d] the fundamental importance of a company's disclosure obligations in s.238 cases" which serves as "the information bank from which the experts can perform their analyses and the Court can be assisted in its task at arriving at the fair value of the Dissenters' shares." [ECF No. 1-26 ¶ 61.] Given the context and stated importance of SINA's discovery obligation in the Appraisal Proceeding, this Court is not persuaded by TuSimple's argument the June 3, 2024 ruling established *only* information in SINA's possession, custody, or control may be relevant to the fair valuation analysis, and by extension all other information would be plainly irrelevant, for purposes of determining whether the for use eligibility requirement is met under § 1782. *See*, *e.g.*, *In re Alpine Partners, (BVI)*, 635 F. Supp. 3d at 908 (recognizing courts should be "permissive" in interpreting relevance for purposes of the for use statutory requirement).

Relying on Judge Skomal's Recommendation, TuSimple also argues Petitioners do not explain how they will use the information in the Appraisal Proceeding, as they have not provided a specific request from Petitioners' expert requesting the discovery. [ECF No. 20 at 14.] Specifically, TuSimple asserts "Magistrate Judge Skomal held that, to satisfy the 'for use' element, Petitioners were required to submit evidence that the information was 'specifically requested by the Petitioners' valuation expert(s).'" [*Id.* (citing *See In re Oasis*

*Focus Fund LP*, 2022 WL 17669119, at \*3–5.] While TuSimple correctly reads Judge Skomal's Recommendation, the Cayman Court's June 3, 2024 ruling modified this aspect of the Directions Order. Specifically, by expanding the temporal scope of discovery permitted to include information through TuSimple's IPO Date, the Cayman Court no longer forecloses information post-dating the December 23, 2020 valuation date absent a specific expert request. In other words, an expert request is no longer the *only* mechanism for "injecting" information post-dating the December 23, 2020 valuation date into the Appraisal Proceeding. *See In re Pioneer Corp.*, 2018 WL 2146412, at \*6. For this reason, the Court finds the for use eligibility requirement under § 1782 is now satisfied. However, Petitioners' failure to provide an expert request still bears on the *Intel* factors, as discussed below.

### 2.    Discretionary Factors

"[E]ven where an applicant satisfies § 1782's statutory prerequisites, the district court still retains substantial discretion to permit or deny the requested discovery." *Khrapunov*, 931 F.3d at 926. In exercising its discretion, a court generally considers the four *Intel* factors identified above. *Intel*, 542 U.S. at 264–65. "[T]he district court should deny the request if the district court suspects that the request is a fishing expedition or a vehicle for harassment[.]" *In re Pioneer Corp.*, 2018 WL 2146412, at \*3 (quotations omitted).

### a.    Participation of Target in the Foreign Proceeding

Petitioners contend the first factor weighs in their favor because TuSimple is not a party in the Appraisal Proceeding and thus not subject to the Cayman Court's jurisdiction. [ECF No. 1-1 at 8.] Petitioners characterize the requested discovery as "documents that would not be in the possession of [SINA], such as TuSimple's internal documents and correspondence with third parties" and, in several places throughout their briefing, Petitioners either imply or explicitly represent SINA has not produced any documents related to TuSimple or its IPO. [*See, e.g.*, ECF No. 21 at 12 ("[A]lthough the Dissenting

Shareholders have requested information related to TuSimple's IPO from SINA, they have not yet received any documents on that topic.").]

TuSimple asserts much of the discovery is either already in Petitioners' possession or otherwise available from SINA in the Appraisal Proceeding. TuSimple relies on the Cayman Court's observation the Dissenters already have a considerable amount of information and documentation that relates to the TuSimple IPO and required SINA to produce additional information through TuSimple's IPO Date. [ECF No. 20 at 16.]

"The first factor considers whether the person from whom discovery is sought is a party to the foreign proceeding[,]" and "the key issue is whether the material is obtainable through the foreign proceeding." *Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894, 898 (N.D. Cal. July 8, 2021) (internal citation omitted) (citing *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at * 3 (N.D. Cal. Mar. 24, 2016)). "Although § 1782 does not have an 'exhaustion' requirement, the Court is permitted, in deciding how to exercise its discretion, to consider whether the applicant has availed itself of discovery procedures in the foreign forum." *In re Ex Parte LG Elecs. Deutschland GmbH*, No. 12-cv-1197-LAB-MDD, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012) (internal citation omitted)). Ultimately, the focus of this factor is whether the discovery "may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

Petitioners have not demonstrated the requested discovery is unobtainable in the Appraisal Proceeding absent § 1782 aid; nor have they availed themselves of discovery procedures in the Appraisal Proceeding. Though TuSimple is not a party to the Appraisal Proceeding, Petitioners represent all the information sought from TuSimple relates to the value of SINA's investment in TuSimple. SINA must also be in possession of information regarding its own investment in TuSimple. Perhaps most significantly, SINA is a party in the Appraisal Proceeding, and the June 3, 2024 ruling specifically required SINA to produce discovery through the TuSimple IPO Date as well as disclose all additional documents "related to price sensitive events that may have had an impact on the value of the company" including the TuSimple IPO. [ECF No. 1-26 ¶¶ 66–67.] The Court finds this

fact highly significant in exercising its discretion under this factor, particularly in light of the explicit discovery process contemplated by the Cayman Court in the June 3, 2024 ruling. Though Petitioners speculate as to what is and is not in SINA's possession, they acknowledge they have not yet received disclosures or discovery from SINA related to the post-valuation or TuSimple IPO—and indeed, such disclosures were not due at the time Petitioners filed this Application. [*See* ECF No. 21-2 ¶ 1(ii) (Order dated August 13, 2024 modifying Directions Order to provide SINA with thirty days to produce the documents required by the June 3, 2024 ruling).] Nothing before the Court suggests SINA has flouted it discovery obligations, much less without recourse, in the Appraisal Proceeding.

To the contrary, the Cayman Court emphasized the "fundamental importance" of the nature and scope of SINA's discovery and disclosure obligations in the Appraisal Proceeding as "the information bank from which the experts can perform their analyses and the Court can be assisted in its task at arriving at the fair value of the Dissenters' shares." [ECF No. 1-26 ¶ 61.] The Cayman Court then explained as "an expert driven process," it "relies heavily on the independent and objective expert opinions of specialist valuers" as they "are in the best position to identify and request relevant documents to their determination of fair value[.]" [*Id.* ¶ 62.] The Cayman Court next discussed the appropriate sequence of discovery in the Appraisal Proceeding:

> The Court acknowledges that the experts are also able to use the Information Request process *to ask for further and better information having first obtained and reviewed the Company's disclosure.* However, they are not to be tasked with asking questions without the relevant disclosure . . . *It is well-established that the primary means by which documents are produced in s.238 proceedings is through discovery, with Information Requests operating as a useful follow up procedure.*

[*Id.* ¶ 73 (emphasis added).] Thus, the Cayman Court made clear only *after* obtaining and reviewing SINA's disclosures—which were not yet due at the time Petitioners filed this Application—should an expert "ask for further and better information" as part of a "useful follow up procedure." [*Id.*] It is also noteworthy in this same June 3, 2024 ruling, the Cayman Court also expressly agreed "without further disclosure [from SINA] [the

24-mc-1341-MMP

Dissenting Shareholders' expert] would be unable to formulate Information Requests in anything more than the most general terms." [*Id.* ¶ 74.]

While § 1782 does not have an "exhaustion" requirement, this Court considers whether Petitioners availed themselves of the discovery procedures in the Appraisal Proceeding in exercising its discretion. At the time Petitioners filed this Application, they had not. Without the benefit of obtaining and reviewing SINA's disclosures and discovery first as the Cayman Court expressly contemplates, the Court is not persuaded Petitioners are in a position to know which, if any, of the information they seek from TuSimple will be produced by SINA or, as Petitioners' own valuation expert acknowledges,[6] how to formulate discovery requests "in anything more than the most general terms." [*Id.*] Without availing themselves of the discovery procedures expressly contemplated by the Cayman Court, this Court cannot conclude the discovery sought under § 1782 is "unobtainable absent § 1782 aid." *See Intel*, 542 U.S. at 264. Accordingly, the Court finds this factor weighs in favor of denying the Application. *See In re Netgear Inc.*, No. 23-mc-794-BLM, 2024 WL 390059, at *4 (S.D. Cal. Jan. 31, 2024) ("Petitioners speculate that they might be unsuccessful and therefore seek to circumvent the UPC process by accessing this Court's procedures. Petitioners have not demonstrated that the desired discovery is unavailable in the UPC proceeding and the Court therefore finds that the first factor weighs in favor of denying the motion.").

### b.    Receptivity of Foreign Tribunal to U.S. Judicial Assistance

For the second factor, courts consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*,

---

[6] Though Petitioners do not support their Application with a specific expert request, in reply they rely on an affidavit from Professor Yilmaz dated March 29, 2024 submitted in the Appraisal Proceeding who Petitioners claim "explained the relevance of post-valuation date discovery relating to TuSimple's IPO." [ECF No. 21 at 9.]

542 U.S. at 264. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d at 898 (internal citation omitted). "[I]f there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved." *Id.*

Petitioners contend "there is no indication, let alone the required 'authoritative proof,' suggesting that the Cayman Court might be unreceptive to Section 1782 assistance." [ECF No. 1-1 at 8.] In attempting to distinguish the prior Recommendation, Petitioners assert "[g]iven the recent Cayman Court rulings confirming (1) the relevancy of TuSimple's IPO and (2) that the scope of discovery relating to TuSimple's IPO now includes the time period after the Valuation Date and until the IPO Date, the Cayman Court would be receptive to the Requested Discovery sought here." [*Id.* at 25–26.] In response, TuSimple contends Petitioners fail to explain "how a discovery order directed at SINA has any bearing on whether the Cayman Court is receptive to receiving duplicative or irrelevant information from TuSimple." [ECF No. 20 at 17.]

The Court agrees with Petitioners the Cayman Court might be receptive to the discovery requested here, either in whole or in part, in light of the June 3, 2024 ruling. As noted above, however, Petitioners filed their Application without the benefit of having first obtained and reviewed SINA's disclosures (which were not yet due) and thus formulated the discovery requests at issue for their expert's analysis in clear contravention of the Cayman Court's established discovery rules and procedure. While Petitioners ask the Court to consider only certain aspects of the Cayman Court's ruling, this Court cannot ignore the Cayman Court's emphasis on the proper nature, scope, and sequence of discovery in section 238 proceedings. Accordingly, the Court finds this factor is neutral.

### c.    Circumventing Proof-Gathering Restrictions

The third factor considers whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Petitioners assert "[t]he question under this prong is

whether the foreign court would be affronted by the applicant's resort to U.S. discovery." [ECF No. 1-1 (quoting *In re Hattori*, No. 21-mc-80236-TSH, 2021 WL 4804375, at *4 (N.D. Cal. Oct. 14, 2021).)] "A petitioner seeks to circumvent foreign discovery restrictions when it seeks discovery that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents." *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO-TSH, 2020 WL 820327, at *5 (N.D. Cal. Feb. 19, 2020) (internal citations and quotations omitted). "A perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d at 899 (internal quotation omitted).

Petitioners contend generally the Application "is not concealing an improper attempt to circumvent foreign discovery restrictions on proof gathering," and "does not implicate any privilege or special protection that would make it improper under the laws of the Cayman Islands." [ECF No. 1-1 at 8.] In opposition, TuSimple contends this factor favors denying the Application because "many of the documents that Petitioners seek are in SINA's possession." [ECF No. 20 at 18.] According to TuSimple, it is unclear why Petitioners seek this discovery from TuSimple, instead of SINA, and to the extent it is because SINA's documents are subject to PRC laws, then this factor weighs strongly against disclosure. [*Id.*] In reply, Petitioners appear to acknowledge at least one category of documents may be in SINA's possession but contend TuSimple has not established *all* discovery sought is actually within SINA's control or documents in its own possession would implicate PRC laws. [ECF No. 21 at 13 ("TuSimple only cites to one of the seven document categories in the Subpoena without explaining how the remaining six categories would be in SINA's possession or otherwise subject to PRC law.").]

As a preliminary matter, the Court does not have sufficient information from the parties' briefing to determine whether documents sought from TuSimple would implicate PRC laws preventing disclosure. Based on the history of this Application and the fluidity of Petitioners' representations regarding the Appraisal Proceeding, the Court has concerns

Petitioners are attempting to side-step discovery procedures in the Cayman Court by resorting to § 1782. Petitioners waited over two months to file their Application with this Court. At the time of filing, the expert valuation deadline was September 6, 2024—less than thirty days out—and Petitioners claimed they would be prejudiced if the discovery sought was not obtained in time for their valuation experts' consideration. [ECF No. 1-1; ECF No. 1-5, ¶ 79.] The day after filing, Petitioners, through agreement, extended the expert valuation deadline to September 27, 2024 and subsequently requested this Court issue an expedited briefing schedule that would provide a mere nine days for TuSimple to respond based on what Petitioners represented were "impending deadlines in [the] Appraisal Proceeding." [ECF No. 7 at 4, 6–7.] The Court denied the request, finding Petitioners were responsible for their own delay in seeking a quicker resolution of this Application, the expert report deadline appeared to be at least somewhat in Petitioners' control, and the Court had concerns Petitioners' requested briefing would result in the parties' opportunities to prepare being unbalanced. [ECF No. 17 at 4–5.]

TuSimple then argued the Application should be denied because, based on the September 27, 2024 deadline, Petitioners' expert may not even see the information Petitioners request. [ECF No. 20 at 15.] In reply, Petitioners appear to do an about face from their initial Application, asserting "even if obtained after the deadline to exchange expert reports has passed, [the requested discovery] may still be introduced at a later stage of the Appraisal Proceeding, including through supplemental expert reports or as evidence submitted ahead of trial." [ECF No. 21; ECF No. 21-1 ¶ 9.] Petitioners also confirmed further extensions of time are available. [*Id.* ¶ 8.] In addition, Petitioners state "they have not yet received any documents" related to TuSimple's IPO from SINA. [ECF No. 21 at 12; *see* ECF No. 21-1 ¶ 11.] As noted above, a review of the relevant Cayman Court order confirms the discovery from SINA was not due until after this Application was filed. [ECF No. 21-2 at 3.] Petitioners' representations as to the alleged expedient nature of this Application as well as the key aspects of the Appraisal Proceeding are disingenuous at best. This conduct, combined with the failure to avail themselves of the discovery procedures

contemplated by the Cayman Court and the lack of expert request to support this request as discussed below, create a perception Petitioners may be attempting to side-step less than favorable discovery procedures through this § 1782 request. *See Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d at 899; *In re Varian Med. Sys*., 2016 WL 1161568, at *5.

### d.    Unduly Intrusive and Burdensome

Under the final factor, the Court considers whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc*., 162 F. Supp. 3d 1029, 1042–43 (N.D. Cal. 2016). "[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265.

Petitioners acknowledge the standard for discovery is "substantially the same as in domestic civil litigation under Federal Rules of Civil Procedure." [ECF No. 1-1 at 28.] Thus, a § 1782 application is also subject to Rules 45 and 26. *In re Quadre Invs., L.P*., 2023 WL 7128464, at *3. Thus, the applicant "must show that the discovery is relevant to the claims and defenses in the foreign tribunal." *In re Oasis Focus Fund LP*, 2022 WL 17669119, at *13 (citation omitted). Rule 26(b)(1) provides for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Proportionality, in turn, considers various factors including the importance of the issues at stake in the action, the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In addition, Rule 45 imposes an obligation on a party serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense" on the subpoenaed non-party. Fed. R. Civ. P. 45(d)(1).

Petitioners contend the subpoena is narrowly tailored to seek evidence addressing the fair value of the Petitioners' shares in SINA and its holding in TuSimple. [ECF No. 1-

1 at 9.] Petitioners assert this Application consists of a reduced number of requests and only seeks documents (no depositions) "seeking information that would not be obtainable from [SINA] during a temporally narrowed 5-month time period leading up to TuSimple's IPO" from December 1, 2020 to April 15, 2021. [ECF No 1-1 at 18, 29.]

In opposition, TuSimple asserts the requests are unduly intrusive, burdensome, and amount to a fishing expedition. According to TuSimple, the seven document categories span a nine-and-a-half-month period, do not seek information relating to TuSimple's IPO price for purposes of evaluating the fairness of SINA's share price, and "Petitioners do not provide any explanation, from an expert or otherwise, about *how* the seven categories of documents relate to a sum-of-the-parts analysis." [ECF No. 20 at 19.] TuSimple asserts the information sought is available from SINA or already in Petitioners' possession, so they "appear to already have, or will have, access to any relevant pricing information concerning TuSimple's IPO[.]" [*Id.*] Additionally, TuSimple represents the information sought would likely have to be transported from the PRC to the United States for review, and many of the documents are likely in Mandarin, which will require an additional layer of review.

As an initial matter, this Court is not persuaded by TuSimple's speculation regarding burden based on the PRC or documents in Mandarin. *See In re Oasis Focus Fund LP*, 2022 WL 17669119, at *13 ("While the concerns raised are certainly conceivable, particularly given the breadth of discovery sought, TuSimple has not provided the Court with sufficient authority or case law establishing a burden on that basis.").

As the moving party, Petitioners have the burden of establishing the seven categories of documents sought in the Application are relevant under Rules 45 and 26(b)(1). *Id.*; *see generally Dominguez v. Corp. of Gonzaga Univ*, No. 17-cv-00286-SAB, 2018 WL 3338181, at *1 (E.D. Wash. Apr. 19, 2018) ("It is well established that information sought through the use of a subpoena must be relevant to that party's claims."); *Chevron Corp. v. Donziger*, No. 12-mc-80237-CRB-NC, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) ("[T]he party issuing the subpoena must demonstrate the discovery sought is relevant."). Petitioners fail to meet this burden. Petitioners do not address the specific document

categories; nor do they provide a declaration or explanation from an expert connecting the categories of documents sought with their expert's valuation analysis. Though the requested discovery appears less broad than Petitioners' prior application in terms of the number and types of discovery requests and temporal scope, the requested discovery still consists of seven broad categories of documents that encompass a four-and-a-half to nine-and-a-half-month period.[7] Further, while Petitioner contends these document categories are "tailored to seek only documents and information directly relevant to critical issues in the Appraisal Proceeding: information about the valuation of TuSimple leading up to the Merger, including TuSimple's IPO," Petitioners make no effort to explain how the various document categories are relevant to determining the value of SINA's investment in TuSimple or their expert's valuation. [*See* ECF No. 1-1 at 28.] Without any explanation as to how the various documents are connected to the expert's analysis, Petitioners have failed to show the requests are relevant.

Further, the lack of expert request to support Petitioners' discovery requests undermines its relevancy and proportionality, particularly as Petitioners claim the discovery is specifically for their valuation expert's analysis in the Appraisal Proceeding. This Court finds the Cayman Court's June 3, 2024 ruling instructive on this issue. In explaining the Appraisal Proceeding is "an expert driven process," the Cayman Court explained it "relies heavily on the independent and objective expert opinions of specialist valuers" because such experts "are in the best position to identify and request relevant documents to their determination of fair value" and "are best placed to determine what information they wish to rely on in support of their valuation methodologies." [ECF No. 1-26 ¶ 62.] Despite this unambiguous language and Petitioners' representation the requested discovery is for their expert's valuation report, Petitioners have provided no explanation from an expert on how the discovery at issue relates to their expert's valuation

---

[7] Contrary to Petitioners' representation, the requests are not limited to a "narrowed 5-month time period leading up to TuSimple's IPO." [*See* ECF No. 1-1 at 18.]

analysis or the "sum of the parts" computation. The Court finds this shortcoming particularly notable because in the previous applications, the Court also found the lack of expert support significant. *See, e.g., In re Oasis Focus Fund LP*, 2022 WL 17669119, at *14 (finding the requests not narrowly tailored because, inter alia, "Petitioners have not provided an explanation from an expert how these broad requests would even relate to a sum-of-the-parts analysis."); *In re Quadre Invs., L.P.*, 2023 WL 7128464, at *3 ("Quadre elected to file this Application without expert support, even after having its prior application denied for that very reason").

Rather, Petitioners rely exclusively on a declaration from counsel speculating generally the discovery "will be used by and will assist the experts retained by the Dissenting Shareholders (including Petitioners) and the Company" and also "in [his] view, it is highly likely that experts will conduct [sum of the parts] valuations in this case." [ECF No. 1-1 at 29; ECF No 1-5 ¶¶ 39, 77.] Petitioners, however, do not provide any explanation from an expert supporting how the specific discovery requests sought in this Application are relevant to a valuation analysis in the Appraisal Proceeding, the claimed basis for the discovery sought in this Application. Instead, Petitioners cite to Professor Yilmaz's prior affidavit dated March 29, 2024 submitted in the Appraisal Proceeding, contending he "explained the relevance of post-valuation date discovery relating to TuSimple's IPO." [ECF No. 21 at 9.] The Court finds this reliance significantly undermines Petitioners' argument because this is the same affidavit on which the Cayman Court relied to conclude "without further disclosure [from SINA] he would be unable to formulate Information Requests *in anything more than the most general terms*." [ECF No. 1-26 ¶ 74 (emphasis added).]

The lack of expert explanation also impacts other proportionality factors under Rule 26. Petitioners do not argue, and nothing before the Court suggests, the requested discovery is determinative of the valuation issue. Further, Petitioners' failure to establish the relevancy of the seven categories of documents does not support a finding the benefit of the discovery outweighs its burden and expense to TuSimple, a non-party. *See, e.g.,, Exxon*

*Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas."); *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery.") (internal citations and quotations omitted). While the Court acknowledges Petitioners do not have the same relative access to the requested discovery from TuSimple, they do have access to "a considerable amount of information and documentation that relates to the *TuSimple* IPO and which appears likely to be relevant to the assessment of the fair value of the Dissenters' shares as at the date of the EGM." [ECF No. 1-26 ¶ 70.] Nowhere in their briefing or accompanying declarations do Petitioners address the type or depth of information already in their possession.

The Court finds Petitioners' requests are not narrowly tailored, and the Court declines to engage in the speculative process of trimming the requests, particularly without guidance from Petitioners' expert as to how they would be used in a valuation analysis. *Intel*, 542 U.S. at 265. Accordingly, the Court finds this factor weighs against denying the Application.

## IV.    CONCLUSION

For the reasons stated above, the undersigned finds the discretionary factors weigh against granting the Application and therefore **RECOMMENDS** Petitioners' Application is **DENIED**.

**IT IS HEREBY ORDERED** any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **February 28, 2025**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** a reply to the objections shall be filed with the Court and served on all parties no later than **March 14, 2025**. The failure to file objections within

24-mc-1341-MMP

the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated:  February 14, 2025

HON. MICHELLE M. PETTIT
United States Magistrate Judge

24-mc-1341-MMP